(59 Misc. Rep. 373.)

### In re KNOLLIN.

(Supreme Court, Special Term, Onondaga County.  May, 1908.)

ELECTIONS—ELECTION OFFICERS—DIVISION AMONG PARTIES.

> Election Law, § 11, subd. 1 (Laws 1896, p. 900, c. 909, as amended by Laws 1901, p. 238, c. 95), requiring inspectors in election districts to be equally divided between the two political parties which, at the general election next preceding that for which the inspectors are to serve, cast the highest and the next highest number of votes, refers to the parties which cast the highest and the next highest number of votes, not in the town, not in the borough or city or county, but in the state, and the same meaning is to be given to Const. art. 2, § 6, requiring all laws, for the appointment of inspectors, to secure equal representation of the two political parties which, at the general election next preceding that for which such inspectors are to serve, cast the highest and the next highest number of votes.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Elections, § 46.]

Application by George B. Knollin for a peremptory writ of mandamus, requiring the town board of Sandy Creek, Oswego county, to appoint certain persons belonging to the Prohibition Party to the office of inspectors of election in said town.  Application denied.

Order affirmed 112 N. Y. Supp. 1134.

Morehouse, Mizen & Morehouse, for applicants.

Roscoe Sargent, for defendants.

ANDREWS, J.  This proceeding is brought to obtain a peremptory writ of mandamus requiring the town board of Sandy Creek, Oswego county, N. Y., to appoint certain persons belonging to the Prohibition Party to the office of inspectors of election in said town.  The facts are not in dispute.  At the general election held in November, 1907, the Republican Party cast the highest number of votes of any party in the town, and the Prohibition Party cast the next highest number of votes.  At the same election the Republican Party cast the highest

number of votes in the state, and the Democratic Party cast the next highest number of votes. In July preceding such general election, at a primary of the Prohibition electors of the town of Sandy Creek, a list of three persons for each of the two election districts of said town, qualified to serve as inspectors of election, was prepared, and in October this list was certified by the presiding officer and the secretary of the said primary, and was filed with the town clerk. A similar certificate was made and filed on behalf of the Republican and the Democratic Parties. The town board subsequently convened, and appointed as inspectors of election two of the men whose names appeared on the Republican list, and two of the men whose names appeared on the Democratic list. The name of the applicant appeared on the Prohibition list, and he claims that two names from the list should have been selected, rather than two names from the Democratic list. The decision of this motion depends upon the construction to be given (1) to subdivision 1 of section 11 of the election law (Laws 1896, p. 900, c. 909, as amended by Laws 1901, p. 238, c 95) and (2) to section 6 of article 2 of the Constitution. Section 13 of the election law provides that the appointment of inspectors of election shall be made from lists prepared, certified, and filed by the two political parties entitled to representation on the board of election officers. Subdivision 1 of section 11 of the same law provides that in every election district there shall be four inspectors, and that such officers "shall be equally divided between the two political parties which, at the general election next preceding that for which such officers are to serve, cast the highest and the next highest number of votes." These appointments are to be made within 30 days after the town meeting for the election of town officers. What is the meaning of these provisions? Do they mean the political parties casting the highest and next highest number of votes in the state, or the political parties casting the highest and the next highest number of votes in the town? It should first be observed that, as town meetings are held in odd-numbered years, ordinarily the vote for state officers and for Governor cannot control, for usually none are elected in such years. Neither can the vote for town officers; for, when the act was passed, except in a very few cases, none were chosen at the time of the general election. The combined vote, therefore, for local officers cast throughout the state, difficult as this may be to compute, must be the vote intended.

A strong argument may be made that it was the intention of the Legislature that the appointment of inspectors should be based upon the vote in the towns in which the appointments were to be made. In the first place, this had been the practice in the state for some years prior to the enactment of the general election law. Next, it is provided that these appointments are to be made within 30 days after the town meeting for the election of town officers. Now, not only is there no provision for the certification to the several town boards of the result in the state, within the 30 days, of the general election, or within any time, but the board of state canvassers may not canvass the vote in the state, and usually does not, until after the 30 days have expired. The town boards, where town elections are held on the same

day as the general election, could have, therefore, no basis upon which to act. This difficulty probably arose, however, because of the fact, before mentioned, that, when the act was passed, town elections were ordinarily held in February, and, when such elections were in most cases changed to November, the effect of such change upon the election law was not observed.

Section 8 of the general election law provides that, in certain cases, an election district may be divided into two or more districts. Where this is done the town board shall appoint four inspectors of election for each district, "two of whom shall belong to the political party which, at the last preceding general election. for state officers, shall have cast the greatest number of votes in such town, and the other of whom shall belong to the political party which at such election shall have cast the next highest number of votes in such town." Section 8a relates to the consolidation of election districts. For the districts so formed the town board is to appoint inspectors of election, "two of whom shall belong to the political party which at the last preceding general election for state officers shall have cast the greatest number of votes in such town, and the other two of whom shall belong to the political party who shall have cast the next highest number of votes at such election." Section 8b permits the boundaries of election districts to be changed; and, where this is done, the town board shall appoint the inspectors, "two of whom shall belong to the political party which at the last preceding general election for state officers shall have cast the greatest number of votes at such election, and the other two of whom shall belong to the political party which shall have cast the next highest number of votes at such election." The section which we have to construe uses the phrase "the two political parties which, at the general election next preceding that for which such officers are to serve, cast the highest and next highest number of votes." It is difficult to give a reason why, where election districts are created by the division of existing districts, the right to inspectors depends upon the number of votes cast in the town; and that, where the boundaries of districts are changed, the right to inspectors depends upon the number of votes cast in the state. Or, still less, that where a district is formed by consolidation two of the inspectors are to be appointed from the party which cast the greatest number of votes in the town, and two from the party which cast the next highest number of votes in the state; for it is to be observed that in section 8a the two forms of expression are used with regard to the same district. Where the Legislature, under section 8, regulated the appointment of inspectors in accordance with the vote in the town, its language is clear and distinct, and there can be no doubt of its meaning. Where, as in section 8b and in section 11, it refers to the number of votes cast by the parties at the last election, without defining whether it refers to the town or to the state, is meaning is ambiguous; and, in view of the unlikelihood that it could have intended to regulate the appointment of inspectors by two different methods, under similar circumstances, it would be easy to interpret the general phrase as having reference to the number of votes cast, not in the

state but in the town. This would be especially so if the various sections had been passed at the same time. Perhaps the explanation is that sections 8a and 8b were added in 1906 (Laws 1906, p. 282, c. 159, § 8a) and 1907 (Laws 1907, p. 1021, c. 470, § 8b), and section 8 only defined the vote as the town vote in 1907. It may be that these changes in the original law were made to meet local situations without due regard to other sections of the act.

In other portions of the act similar expressions are used. In two instances the meaning is clear. Section 61, providing for the publication of nominations, says that one of such publications shall be made in a newspaper "which advocates the principles of the political party that, at the last preceding election for Governor, cast the largest number of votes in the state for such office." So in section 10 publication of the lists of places designated for registry and voting outside of the city of New York is to be made in newspapers, one of which shall be one "that advocates the principles of the political party polling the highest number of votes in the state at the last preceding election for Governor"; and the same provision is made with regard to similar publications in the borough of Manhattan. On other occasions the meaning is ambiguous. In section 11, subd. 2, commissioners of elections are to be recommended by the chairmen of the county committees within the counties of New York and Kings "of each of the two political parties which, at the general election last preceding the date of such certificate, cast the highest and next highest number of votes for Governor." And in section 11, subd. 2e, it is said that the intention is to secure, in the appointment of members of the board of election, equal representation "of the two political parties which, at the general election next preceding such appointment cast the highest and next highest number of votes for Governor." Whether the parties meant are the parties having the highest number of votes in the state or in the borough of Manhattan is not stated. So in section 7 certain publications are required to be made in newspapers "published in each county, representing the two political parties polling the highest number of votes at the then last preceding general election."

In construing the election law the history of this law has considerable force. Chapter 348, Laws 1894, p. 675, provided for the appointment of the inspectors by the presiding officer of each annual town meeting. In addition to the two for each district who were elected, he was to appoint the two persons in each election district who had received the highest number of votes next to those who had been elected. They were not, however, to be of the same political faith as the inspectors elected, but were to belong to one of the two political parties "which, at the last general election for state officers shall have cast the greatest and next greatest number of votes in said town." When, after the adoption of the new Constitution, the election law was passed in 1896, section 11 read as follows:

"Each class of such officers (referring to inspectors of election) shall be equally divided between the two political parties which, at the last preceding election for Governor, polled the highest and next highest number of votes for such office in the state."

But in 1899 the words "for Governor" and "for such office in the state" were eliminated, showing apparently a clear change of intention.

But there is one important consideration opposed to the construction of the act sought by the relator. Section 6 of article 2 .of the Constitution provides, all laws for the appointment of inspectors "shall secure equal representation of the two political parties which, at the general election next preceding that for which such boards of officers are to serve, cast the highest and next highest number of votes." It it obvious that this section provides one test to which the appointment of inspectors throughout the state shall conform. The rule must be uniform. The vote in a local division may not govern here, and the general vote there. If the vote cast in the state is what is intended, any other test may not be applied; if the local vote, the same thing is true. Section 12 regulates the appointment of inspectors in cities. They are to be divided among the parties as provided by section 11. Each political party entitled to representation may file with the board of election in New York City, and with the mayors of the other cities, a list of names of the members of the party duly qualified to serve as election officers. In the city of New York such lists are filed with the chairman of the county committee of the parties in the respective counties within the city; in the other cities with the chairman of the city committee, or, if there be no city committee, with the chairman of the county committee. If there is any factional dispute, the list is to be accepted from that section of the party which was recognized as regular at the last preceding state convention of the party. It is clear that, so far as cities are concerned, the act contemplates the recognition of the state vote; and this is the practical construction that has always been given to the section. If not, what is to govern? In the city of New York is it the vote of the different boroughs, the vote of the several counties included in the city, or the vote of Greater New York? Therefore either the rule adopted in cities or that for which the relator contends must violate the Constitution.

So we must come at last to a construction of the Constitution. If the Constitution has reference to the votes of political parties in the state, if, as a consequence, the attempt to apply any other test would be unconstitutional, the court should be slow to construe the election law in such a manner as to render important sections invalid. Necessarily, if this is the meaning of the Constitution,·there is no avoiding such a course with regard to certain portions, such as section 8 and section 8a. But this is of much less importance than the same finding with regard to either sections 12 or 13. As to the Constitution itself, I think it must be held to refer to the vote in the state when it refers to the two political parties "which, at the general election next preceding, cast the highest and the next highest number of votes." Not much help is received from a consideration of the proceedings of the constitutional convention in which this article was adopted. On the one hand, as originally introduced, it stated explicitly that the two political parties which cast the highest and the next highest number of votes "in the state" were to be considered, and these words, which would have made the meaning clear and definite, were omitted. On the oth-

er hand, in the debates which took place in the convention, statements were made without contradiction which seem to deprive this omission of the significance which it might otherwise have. I think, however, it is the state parties which it is designed to protect—the parties whose nominees will fill the important offices of the state. If the prevailing vote in localities was to govern, the vote for local officers would have been made the test. But, when the section refers to the highest number of votes cast at the general election, when it fails to limit those votes to those cast in the county, in the city, in the borough, in the town, or in the election district, the only meaning that can fairly be given to it is that the state vote is the basis upon which the computation is to be made; and, as has been.said, this was the construction given to the section by the Legislature, immediately after the adoption of the Constitution by the law of 1896. There is one authority, and only one so far as I can find, on this subject. It is People v. Gleason, 18 Misc. Rep. 511, 42 N. Y. Supp. 1084. In that case it was held that the parties casting the highest number of votes in the state were entitled to inspectors. It is true that, at the time, the statute expressly so provided. But, unless this provision had conformed to the Constitution, it would not have been enforced. Taking this view of the meaning of the Constitution, having in mind the unfortunate consequences that would result in declaring the election law unconstitutional, in so far as it regulated the appointment of election officers, either in the cities or the towns, I must hold, notwithstanding the arguments made by the relator, that section 11 of the election law, when it speaks of dividing election officers between the parties which, at the general election, cast the highest and next highest number of votes, refers to the parties which cast such votes, not in the town, not in the borough or city or county, but in the state, and that the same meaning is to be given to section 6 of article 2 of the Constitution. This being so, the relator must fail upon this application, and the proceeding herein is dismissed, with costs.

The same result follows in Matter of the Application of Albert B. Miles for a writ of mandamus, where a precisely similar state of facts exists.

Proceeding dismissed, with costs.